IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| AARON RAISER, a.k.a. T.G.,<br><br>        Plaintiff,<br><br>vs.<br><br>THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS and BRIGHAM YOUNG UNIVERSITY,<br><br>        Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:04-CV-896 |

In September 1994, *pro se* Plaintiff Aaron Raiser filed suit against Defendants The Church of Jesus Christ of Latter-Day Saints (LDS Church) and Brigham Young University (BYU). After months of procedural wrangling, court rulings, and concessions by Mr. Raiser, the number of Mr. Raiser's multiple claims against the Defendants has been reduced. Against the LDS Church, he now asserts one claim: breach of privacy (a tort). Against BYU, he now asserts two claims: breach of privacy, and a 42 U.S.C. § 1983 claim for violation of the constitutional separation of church and state.

The following motions are currently before the court:

(1)  Defendant LDS Church's Renewed Motion for Summary Judgment (Dkt # 115);

(2)  Defendant BYU's Motion for Summary Judgment (Dkt # 189);

(3)  Defendant LDS Church's Motion for Discovery Sanctions (requesting dismissal and attorneys' fees) (Dkt # 52);

(4) Defendant BYU's Motion for Discovery Sanctions (requesting dismissal and attorneys' fees) (Dkt # 59) (and joining in LDS Church's Motion for Discovery Sanctions);

(5) Plaintiff Aaron Raiser's Rule 60 Motion (Dkt # 122) for Relief from Order dated 4/26/05 (Dkt # 35) and related Motion for Sanctions (Dkt # 121);

(6) Plaintiff Aaron Raiser's motion for leave to amend the Complaint (Dkt # 13);[1]

(7) Defendant BYU's Motion for Permanent Injunction Against Aaron Raiser as a Vexatious Litigant (Dkt # 134) (the LDS Church joins in this motion – see Dkt # 144); and

(8) Defendant BYU's Motion to Strike Plaintiff's Response to Motion to Hold Plaintiff as a Vexatious Litigant (Dkt # 184).

Having fully considered the motions and all related filings, arguments of the parties, and the governing law, the court finds, for the reasons set forth below, that the Defendants are entitled to summary judgment but not to their requested discovery sanctions. Mr. Raiser's motion for relief from the court's April 26, 2005 Order is denied because the transcript of the April 19, 2005 hearing demonstrates that the court's April 26, 2005 Order correctly reflected the court's ruling at the hearing. Mr. Raiser's related motion for sanctions is denied for the same reason. Mr. Raiser's motion for leave to amend the complaint is denied because the proposed amendment would be futile. The court denies the Defendants' vexatious litigant motions without prejudice but forwards the papers associated with the motions to Chief Judge Dee Benson, who has authority to grant such relief, with the recommendation that Mr. Raiser be placed on the restricted filer list. Finally, BYU's Motion to Strike is denied as moot.

---

[1] Mr. Raiser's motion for leave to amend his complaint was held in abeyance during the court's April 19, 2005 hearing on various motions, "pending the completion of discovery and resolution of any renewed Motion for Summary Judgment." (Apr. 26, 2005 Order (Dkt # 35) at 4.)

## PROCEDURAL BACKGROUND

Mr. Raiser filed this *pro se* action against the LDS Church and BYU on September 23, 2004. BYU is a private university, sponsored by the LDS Church. Mr. Raiser asserts, among other things, a breach of privacy claim arising out of a 2002 disclosure of his "known . . . psychiatric history" in a court document in an unrelated case.

On December 8, 2004, the LDS Church filed a motion for summary judgment. In response, Mr. Raiser filed a Rule 56(f) motion for discovery. On April 19, 2005, the court granted Mr. Raiser's 56(f) motion and denied the LDS Church's motion for summary judgment without prejudice. (See Transcript of Apr. 19, 2005 Hearing (Dkt # 42).) The court gave the LDS Church permission to renew its motion after completion of the ordered discovery. Setting a discovery deadline of July 19, 2005, the court allowed limited discovery based on terms set forth in the April 26, 2005 Order (Dkt # 35). Mr. Raiser was given permission to depose Dan Towsey, Eugene Bramhall and Erik Davis. Even though Mr. Raiser had the opportunity to depose these key witnesses, he did not take advantage of that opportunity. (See Apr. 26, 2005 Order (Dkt # 35); Transcript of Apr. 19, 2005 Hearing (Dkt # 42); Nov. 2, 2005 Mem. Decision & Order of Mag. J. Brooke Wells (Dkt # 210) at 14-15.) After the discovery deadline passed, the LDS Church renewed its motion for summary judgment (currently pending before the court) and BYU submitted its own motion for summary judgment.

Mr. Raiser complains that his efforts to conduct discovery were thwarted by the Defendants. He filed many motions challenging the discovery process (e.g., motions to compel, motions to extend the discovery deadline, and motion to take deposition by telephone), all of which were resolved by Magistrate Judge Brooke Wells in her November 2, 2005 Memorandum

3

Decision and Order (Dkt # 210). In the Order, Magistrate Judge Wells denied many of his requests.

Mr. Raiser's complaints about his inability to obtain the proper discovery have been dealt with fairly by the Magistrate Judge. Moreover, Mr. Raiser did not appeal the magistrate judge's November 2, 2005 Order, and so the Order stands. The fact that Mr. Raiser is proceeding *pro se* does not excuse his obligation to comply with the requirements of federal procedural law. See Ogden v. San Juan County, 32 F.3d 452, 455 (10th Cir. 1994). Accordingly, the court proceeds to the merits of the case.

## FACTUAL BACKGROUND[2]

Mr. Raiser, apparently a member of the LDS Church, alleges that his former ecclesiastical leaders — his former bishop Dan Towsey and his former stake president Eugene Bramhall[3] — disclosed to BYU's General Counsel staff that Mr. Raiser had been declared mentally incompetent and had been institutionalized for a mental illness. He then alleges that such information was publicly disclosed in 2002 in court papers written and filed by BYU's counsel in a separate case.

Specifically, on November 4, 2002, counsel for BYU filed a Memorandum in Support of a Motion to Dismiss (hereinafter "BYU Memorandum") in the separate, unrelated case of Raiser v. Brigham Young University, United States District Court for the District of Utah, Case No.

---

[2]There are no genuine disputes of material fact.

[3]"In the LDS Church, a bishop is the ecclesiastical leader of a local congregation called a 'ward.' A group of wards make up a 'stake,' which is headed by a stake president." Scott v. Hammock, 870 P.2d 947, 949 n.1 (Utah 1994). (See also Aff. of Dan J. Towsey in Supp. of Def.'s Mot. for Summ. J. ¶¶ 2-3, attached as Ex. D to Mem. Supp. Def. Church's Renewed Mot. Summ. J.)

2:02-CV-975-TC.  In that case, Mr. Raiser alleged multiple acts of misconduct against BYU's police force, among other things.  (See Compl. ¶¶ 113-177, Case No. 2:02-CV-975-TC, D. Utah, Dkt # 1.)

The BYU Memorandum included the statement that Mr. Raiser had a "known . . . psychiatric history."  (Ex. B to Mem. Supp. Def. Church's Renewed Mot. Summ. J. at ii.)  Specifically, the language in question appeared in the following paragraph:

> Mr. Raiser has an extensive history of encounters with the Police Departments of both Provo City and [BYU].  Most of the BYU Police Department's encounters with Mr. Raiser have been in response to calls from concerned students or faculty members who have felt threatened or uneasy because of Mr. Raiser's presence on campus at unusual times and places and/or his bizarre or suspicious behavior and appearance.  Mr. Raiser has also been involved in a number of criminal incidents with officers of the Provo and BYU Police Departments, including arrests for criminal trespass, disorderly conduct, lewdness, and lewdness involving a child.  These incidents and the circumstances surrounding them have justifiably caused BYU Police officers to treat Mr. Raiser with a certain amount of caution, but their actions towards Mr. Raiser have in all ways been reasonable and justified in light of Mr. Raiser's suspicious and bizarre behavior and his <u>known</u> criminal and <u>psychiatric history</u>.

(<u>Id.</u> at i-ii (citation omitted; emphasis added).)  This alleged breach of privacy has given rise to the action currently before the court.

Mr. Raiser's former bishop, Dan Towsey, testifies in his affidavit that he has no recollection of ever knowing that Mr. Raiser had been declared incompetent or ever been institutionalized, and no recollection of ever disclosing such information to any person.  (Aff. of Dan J. Towsey in Supp. of Def.'s Mot. for Summ. J. [hereinafter "Towsey Aff."] ¶ 7, attached as Ex. D to Mem. Supp. Def. Church's Renewed Mot. Summ. J.)  Similarly, former Stake President Eugene Bramhall testifies in his affidavit that he has no recollection of ever being informed by Mr. Towsey or any other person that Mr. Raiser was declared incompetent or institutionalized,

that even if he had the information he has no recollection of ever disclosing such information to any other person, and that he had no involvement in the preparation or filing of the November 2002 BYU memorandum about which Mr. Raiser complains (Mr. Bramhall also served as BYU's General Counsel, but he retired in October 2000).  (Aff. of Eugene H. Bramhall in Supp. of Def.'s Mot. for Summ. J. [hereinafter "Bramhall Aff."] ¶¶ 2, 4-7, attached as Ex. E to Mem. in Supp. of Def. Church's Renewed Mot. Summ. J.)  And the BYU attorney who wrote the November 2002 BYU Memorandum says that the information included in the memorandum did not come from Mr. Towsey, Mr. Bramhall or the LDS Church but rather from the BYU Police Department files.  (Aff. of Erik G. Davis in Supp. of Def.'s Mot. for Summ. J. [hereinafter "Davis Aff."] ¶¶ 4-5, attached as Ex. C to Mem. in Supp. of Def. Church's Renewed Mot. Summ. J.)  Indeed, the record before the court shows an August 6, 1991 comment in the BYU police department file concerning Mr. Raiser:

> 08/06/91 - Walked away from Psychiatric Hospital in Columbus, OH.  BYU grad and RM; may find his way to SLC or Provo.  Not dangerous, but peculiar behavior.  Call parents Ed or Loraine, or sister Ginny [telephone number omitted] if seen.  Call collect; leave message.

(BYU Police Department Intelligence Report, attached as Ex. B to Pl.'s Response to Renewed Mot. Summ. J.)

Mr. Raiser presented a document to the court in which Eugene Bramhall, on April 27, 1992, made the following statement to the BYU Admissions Office in his role as an LDS Church stake president:

> Aaron meets all of the usual admission standards.  However, by personal observation, confirmed by his bishop & family, it is apparent that he has an emotional or psychological deficit.  I am also told, but have not personally verified that he has been hospitalized for schizophrenia & that he has something

6

> called a "sensory deficit" as well. I believe that he presently takes no medication
> for his condition. I believe that Aaron can benefit from intensive counseling, &
> that the possibility of his receiving [illegible] counseling is highest if he is
> admitted to the University.

(Eugene Bramhall's confidential written statement to BYU Admissions Office, attached as Ex. A to Pl.'s Response to Renewed Mot. Summ. J.)

Mr. Raiser also emphasizes an event that occurred in August 1996, when Mr. Raiser was denied access to the BYU campus. He appealed that decision to BYU's Access Committee, which was then chaired by Dave Thomas, a member of the BYU General Counsel's office. Mr. Raiser spoke with Mr. Thomas at that time and requested that Mr. Thomas talk to Eugene Bramhall "to see if that would help." (See Pl.'s Response to Renewed Mot. Summ. J. [hereinafter "Pl.'s Opp'n Mem."] at 5-6; Fourth Decl. of Pl., attached as Ex. C to Pl.'s Opp'n Mem.)

Even if the record did contain any admissible evidence that Mr. Thomas spoke to Mr. Bramhall regarding Mr. Raiser, the undisputed record shows that Mr. Thomas first learned of Mr. Raiser's psychiatric history from BYU Police who told Mr. Thomas that Mr. Raiser had "walked away" from a psychiatric facility. Mr. Thomas mentioned this to Mr. Davis.[4] Mr. Davis then reviewed the BYU Police records and based his statement regarding Mr. Raiser's "known . . . psychiatric history" solely on his own examination of these records, specifically the 1991

---

[4] Mr. Raiser objects to this evidence presented by BYU in the form of supplemental responses to interrogatories. (See Pl.'s Response to BYU's Mot. Summ. J. at 15-16; BYU's Supplemental and Am. Responses to Pl.'s Request for Discovery #3 (Interrogatory Numbers 8 and 10), attached as Ex. 1 to BYU's Reply Mem. Supp. Mot. Summ. J.) Specifically, Mr. Raiser objected on the basis that the responses were not certified according to the requirements set forth in Fed. R. Civ. P. 26(g). The court declines to grant Mr. Raiser's apparent request to disregard the interrogatory responses.

comment contained in those records. There is no evidence that Mr. Bramhall disclosed to Mr. Thomas, the BYU police department, or BYU's general counsel staff the information he apparently had in 1992.

**ANALYSIS**

**The Defendants' Motions for Summary Judgment**

**Legal Standard**

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).

But summary judgment should be granted if the plaintiff, who bears the burden of proof, lacks the evidence necessary to support one or more elements of his claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ("[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim."). And the non-moving party

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

**LDS Church's Motion for Summary Judgment**

Mr. Raiser's only claim against the LDS Church is a breach of privacy claim. Although Mr. Raiser does not identify a specific privacy tort, the nature of the claim appears to be the public disclosure of an embarrassing private fact, specifically, that Mr. Raiser has a psychiatric history. To succeed on a claim of invasion of privacy, Mr. Raiser must establish the following: "(1) the disclosure of the private facts must be a public disclosure and not a private one; (2) the facts disclosed to the public must be private facts, and not public ones; and (3) the matter made public must be one that would be highly offensive and objectionable to a reasonable person of ordinary sensibilities." Stien v. Marriott Ownership Resorts, 944 P.2d 374, 380 (Utah Ct. App. 1997), cited with approval in Shattuck-Owen v. Snowbird Corp., 16 P.3d 555 (Utah 2000) (adopting elements announced in Stien).

The LDS Church contends that it is entitled to summary judgment because there is no evidence of any public disclosure by the Church, and the information that was ultimately disclosed (although not by the Church) was not highly offensive and objectionable. The LDS Church also raises defenses invoking the judicial proceeding privilege and the statute of limitations bar.

The court finds that there is no evidence of any public disclosure by the LDS Church. Accordingly, Mr. Raiser's breach of privacy claim fails as a matter of law. The undisputed facts show that Mr. Davis, who authored the brief disclosing Mr. Raiser's "known . . . psychiatric history," obtained his information from the BYU police department files, not from Mr. Bramhall,

Mr. Towsey, or any other representative of the LDS Church. The fact that Mr. Bramhall knew something about Mr. Raiser's psychiatric history in 1992 and revealed that in a confidential 1992 written statement to the BYU admissions office does not contradict Mr. Davis's sworn testimony regarding his source for the information (BYU police department files).[5] Nor does it support a finding that Mr. Bramhall made any public disclosure of Mr. Raiser's sensitive personal information. Under Utah law, a "public disclosure" for purposes of the invasion of privacy tort "'means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" Shattuck-Owen, 16 P.3d at 558 (quoting Restatement (Second) of Torts § 652D cmt. a (1977)). Mr. Bramhall's statement to the BYU Admissions Office does not fall within the legal definition of public disclosure.

And Mr. Raiser has failed to present any evidence of any other disclosure by a representative of the LDS Church. The fact that BYU counsel made a disclosure in a public court document does not implicate the LDS Church, which is an entity entirely separate from BYU. Also, Mr. Raiser presents nothing more than unsupported inferences that, in 1996 when Mr. Raiser was denied access to the BYU campus, Mr. Thomas (chair of the BYU Access Committee) spoke to Mr. Bramhall about Mr. Raiser (at Mr. Raiser's request) and that Mr. Bramhall then revealed information to Mr. Thomas regarding Mr. Raiser's psychiatric history.

---

[5] The court is not persuaded by Mr. Raiser's argument that the 1991 comment did not contain enough information to supply Mr. Davis's information or support Mr. Davis's interpretation of the information.

The court declines to make such an inference.[6] Even if the court found such an inference valid, such a finding does not dispute the fact that Mr. Davis's sole source for the information was a BYU police department report (which reports are public record)[7], nor does it establish that any alleged disclosure by the LDS Church was public.[8]

For the foregoing reasons, the LDS Church is entitled to summary judgment.

**BYU's Motion for Summary Judgment**

The only remaining claims by Mr. Raiser against BYU are a claim for invasion of privacy and a claim of violation of the constitutional separation of church and state (brought under 42 U.S.C. § 1983). Mr. Raiser also originally asserted a claim of violation of the Americans with Disabilities Act (ADA), but he conceded at the November 21, 2005 hearing that his ADA claim could not withstand BYU's motion for summary judgment (indeed, his opposition to BYU's motion did not even address BYU's arguments concerning the ADA claim). He accordingly withdrew his ADA claim at the hearing.[9]

---

[6]Mr. Raiser's assertion that the Defendants have thwarted his discovery efforts does not help, as Mr. Raiser could have tested his assumptions in a deposition of Mr. Bramhall, a deposition he now says need not be taken. (See Pl.'s Response to BYU's Mot. Summ. J. at 18.)

[7]Information contained in police reports does not implicate a right to privacy. See Nilson v. Layton City, 45 F.3d 369, 372 (10th Cir. 1995) ("information contained in police reports [does] not implicate the right to privacy") (internal citation omitted); Scheetz v. The Morning Call, Inc., 946 F.2d 202, 207 (3d Cir.) ("When police are called, a private disturbance loses much of its private character.").

[8]Given the dispositive nature of the court's finding, the court declines to address the LDS Church's other defenses.

[9]Mr. Raiser originally asserted the following claims against BYU: breach of privacy, defamation, false light, a violation of separation of church and state, and a violation of the Americans with Disabilities Act (the ADA). The list of claims has been winnowed down. Mr. Raiser voluntarily deleted his defamation and false light claims from his complaint after

BYU, in its motion for summary judgment, asserts that Mr. Raiser's claim for breach or privacy is barred by the judicial proceeding privilege and the fact that the communications at issue are true.  As for Mr. Raiser's separation of church and state claim, BYU contends that Mr. Raiser's claim fails as a matter of law because he has not suffered any injury attributable to religious bias or government endorsement of religion.

<u>Mr. Raiser's Invasion of Privacy Claim</u>

BYU contends that Mr. Raiser's breach of privacy claim is barred by the judicial proceeding privilege, which is a defense to certain claims under Utah law.  The Utah Supreme Court has held that the judicial proceeding privilege, as set forth in Utah Code Ann. § 45-2-3(4), should apply not only to defamation claims (as the statute expressly states) but also to a claim for invasion of privacy based on the same set of operative facts as a claim for defamation.  <u>Russell v. Thomson Newspapers, Inc.</u>, 842 P.2d 896, 906 n.37 (Utah 1992).  Here, Mr. Raiser originally asserted a claim of defamation against BYU, but he later amended his complaint to remove that cause of action.  (<u>See</u> Nov. 2, 2005 Mem. Decision & Order at 10 (granting leave to Mr. Raiser to remove two causes of action, including defamation, from his complaint).)  Still, Mr. Raiser's remaining claim for invasion of privacy was based on the same set of facts as the defamation claim.  The court finds that the judicial proceeding privilege is a proper defense to Mr. Raiser's claim for invasion of privacy.

The judicial proceeding privilege is an absolute defense to such a claim when a statement (1) is made during a "judicial proceeding"; (2) has "some reference" to the subject matter of the

---

receiving permission from the court to amend his complaint.  (<u>See</u> Nov. 2, 2005 Order at 10.)

proceeding; and (3) is made by someone acting as legal counsel for a party. DeBry v. Godbe, 992 P.2d 979, 983 (Utah 1999). The Utah Supreme Court adopted a broad interpretation of "judicial proceeding, " noting that the privilege "applies to 'every step in the proceeding until final disposition.'" Id. (internal citation omitted). The statement made in the BYU Memorandum was clearly made during a judicial proceeding (it was part of a memorandum in support of a motion before the court). As for the requirement that the statement have "some reference" to the subject matter of the proceeding, the statement "need not be relevant or pertinent to the judicial proceeding from an evidentiary point of view for the privilege to apply." Id. at 984. And any doubts should be "resolved in favor of the statement having reference to the subject matter proceeding." Id. BYU's statement, in response to allegations of misconduct by the BYU police force, clearly had reference to the subject matter of the proceeding (it was offered to justify the actions of members of the BYU police force in their dealings with Mr. Raiser). And there is no dispute that the statement was made by an attorney representing BYU in the litigation.

Mr. Raiser's breach of privacy claim is barred by the judicial proceeding privilege. Accordingly, BYU is entitled to summary judgment on Mr. Raiser's invasion of privacy cause of action.

<u>Mr. Raiser's 42 U.S.C. § 1983 Claim Regarding Separation of Church and State</u>

Mr. Raiser asserts that he has been injured by a violation of the Establishment Clause requiring separation of church and state. Under the Establishment Clause, the government "must not foster an excessive government entanglement with religion." Utah Gospel Mission v. Salt Lake City Corp., 425 F.3d 1249, 1261 (10th Cir. 2005) (internal citations and quotation marks omitted). "At its core, the Establishment Clause enshrines the principle that government may not

act in ways that 'aid one religion, aid all religions, or prefer one religion over the other.'" Snyder v. Murray City Corp., 159 F.3d 1227, 1230 (10th Cir. 1998) (internal citation omitted).  BYU contends that Mr. Raiser has not suffered any injury attributable to religious bias or government endorsement of religion and so his claim fails as a matter of law.

In order to assert a claim under the Establishment Clause of the First Amendment, Mr. Raiser must establish the requisite standing to bring such a claim.  A person has standing if he can demonstrate injury traceable to government action which may be redressed by the courts and that his particular interest is within the zone of interests sought to be protected.  Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982).  In an action under the Establishment Clause, Mr. Raiser must have suffered injury because of alleged government action coercing him to practice any particular religion or tending in any way to create a state-endorsed religious faith.  Lee v. Weisman, 505 U.S. 577, 588 (1992).  Stated another way, standing under the Establishment Clause exists when a plaintiff's injuries result from religious bias or endorsement, such as being "subjected to unwelcome religious exercises or [being] forced to assume special burdens to avoid them."  Valley Forge, 454 U.S. at 487 n.22.

Mr. Raiser's sole injury claim is for damage to his reputation.  (See Pl.'s Response to BYU's Mot. Summ. J. at 31.)  And in his response to BYU's Motion for Summary Judgment, he acknowledges that the sole basis for his action is an alleged "excessive government entanglement with religion."  (Id. at 30.)  But Mr. Raiser has not provided any evidence supporting his contention that his injury is attributable to excessive government entanglement with religion.

The court finds that he does not have standing to bring an action under the Establishment

Clause. Accordingly, BYU is entitled to summary judgment on Mr. Raiser's separation of church and state claim.

### The Defendants' Motions for Discovery Sanctions

Because the court grants the LDS Church's and BYU's motions for summary judgment, the Defendants' requests for sanctions in the form of a dismissal of Mr. Raiser's complaint are moot. As for the Defendants' requests for attorneys' fees, the court finds (based on sealed sworn affidavits submitted to the court by Mr. Raiser) that Mr. Raiser, who is proceeding *pro se*, does not have the financial ability to pay such fees. Awarding attorneys' fees to the Defendants would be a fruitless endeavor. For the foregoing reasons, the Defendants' motions for sanctions are denied.

The court, however, recognizes the unnecessary burden Mr. Raiser's litigation behavior has placed on the Defendants. As noted below, the court recommends (as did Magistrate Judge Wells in her November 2, 2005 Order on pages 17-19) that Mr. Raiser be placed on the court's restricted filer list to prevent future abusive behavior on his part.

### Plaintiff's Motion for Rule 60 Relief from Order Dated 4/26/05 and Related Motion for Sanctions

Mr. Raiser has filed a Motion for Rule 60 Relief from the court's Order dated April 26, 2005 (Dkt # 122). He also filed a related Motion for Sanctions requesting assessment of penalties against the Defendants for "purposefully alter[ing] that Order to gain certain advantage in the case . . . ." (Dkt # 121).

Mr. Raiser, by filing his Rule 60 motion, essentially has filed an "after the fact" objection to the form of the Order signed by the court on April 26, 2005. Mr. Raiser's motion reads in full

as follows:

> Plaintiff motions for relief from the Order dated on or about 4/25/05 regarding the discovery Order [and bases his argument] on Plaintiff's previously submitted motion for sanctions dated on or about 7/25/05. Defendant(s) did engage in deceit and fraud when submitting that proposed order to gain advantage in the case as they materially altered it on purpose to gain that advantage. Plaintiff asks for a hearing regarding this matter. The Relief sought is for Plaintiff to not have to be deposed at this time by defendant as the 4/19/05 hearing forbid it and for other relief the court sees as appropriate.

(Plaintiff's Am. Mot. for Rule 60 Relief from Order (Dkt # 122).)

The court declines to grant relief from its April 26, 2005 Order. First, Mr. Raiser's 60(b) motion was filed more than one year after the Order was issued, in violation of the requirement of Federal Rule of Civil Procedure 60(b). Second, even if Mr. Raiser had filed his motion in a timely manner, the transcript of the hearing giving rise to the April 26, 2005 Order shows that the Order as drafted is correct. (See Transcript of Apr. 19, 2005 Hearing (Dkt # 42).)

There was no mistake or fraud in the drafting of the order. The written order accurately reflects the court's ruling at the hearing. Accordingly, the court denies Mr. Raiser's Rule 60 Motion and Mr. Raiser's Motion for Sanctions.

**Plaintiff's Motion to Amend the Complaint**

Mr. Raiser's motion for leave to amend his complaint (Dkt # 13) was held in abeyance during the court's April 19, 2005 hearing on various motions, "pending the completion of discovery and resolution of any renewed Motion for Summary Judgment." (Apr. 26, 2005 Order (Dkt # 35).) In that motion to amend, Mr. Raiser moved to assert a new claim for "breach of confidence." His motion states that the same facts previously alleged support his new claim.

Federal Rule of Civil Procedure 15(a) makes clear that leave to file an amended

complaint shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). Still, because the permissive period within which to amend the complaint has passed, the decision to grant leave is within the court's discretion. Id.; Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994); Bauchman v. West High Sch., 132 F.3d 542, 559 (10th Cir. 1997).

The Defendants contend that the court should not allow Mr. Raiser to add his proposed claim for "breach of confidence" because such an amendment would be futile. Futility of a proposed amendment – such as its inability to survive a motion to dismiss – is one recognized ground for denial of a motion to amend. Bauchman, 132 F.3d at 559. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." Gohier v. Enright, 186 F.3d 1216, 1218 (10th Cir. 1999).

Mr. Raiser contends that the "breach of confidence" claim has four elements: "(1) a confidential communication (2) made to a person who had a duty to keep that communication confidential and (3) that duty was breached and (4) the Plaintiff was injured thereby." (Pl.'s Mot. For Am. Compl. (Dkt #13) at 1.) He cites no case law to support his proposition. Even assuming such a cause of action exists in Utah (a questionable assumption, as noted in the LDS Church's opposition to Mr. Raiser's motion to amend), the court finds that Mr. Raiser has not pled allegations that would support the purported cause of action. Accordingly, his amendment would be futile and the court denies his motion to add the claim of "breach of confidence."

**The Defendants' Vexatious Litigant Motions**

The Defendants have moved this court to permanently enjoin Mr. Raiser from filing any lawsuit in this jurisdiction without first obtaining leave of the court. Because the Defendants seek relief that goes beyond the scope of the case currently assigned to this court, the court finds

that it does not have authority to grant the Defendants' motions.

Still, the District Court of Utah, through its Chief Judge (Judge Dee Benson), has the authority to enjoin litigants who abuse the court system. See 28 U.S.C. § 1651(a). Magistrate Judge Brooke Wells has already recommended that Mr. Raiser be placed on the District Court of Utah's restricted filer list. (See Nov. 2, 2005 Order at 19.) This court hereby makes the same recommendation to Chief Judge Dee Benson.

The court denies the Defendants' vexatious litigant motions without prejudice. But the court also forwards the papers associated with the Defendants' vexatious litigant motions to Judge Benson for consideration of the question whether Mr. Raiser should be placed on the restricted filer list for the District of Utah.

**BYU's Motion to Strike**

Based on the court's denial of BYU's Motion for Permanent Injunction Against Aaron Raiser as a Vexatious Litigant, BYU's Motion to Strike Plaintiff's Response to Motion to Hold Plaintiff as a Vexatious Litigant is moot.

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1. Defendant LDS Church's Renewed Motion for Summary Judgment (Dkt # 115) is GRANTED.

2. Defendant BYU's Motion for Summary Judgment (Dkt # 189) is GRANTED.

3. Defendant LDS Church's Motion for Discovery Sanctions (Dkt # 52) is DENIED.

4. Defendant BYU's Motion for Discovery Sanctions (Dkt # 59) is DENIED.

5. Plaintiff Aaron Raiser's Rule 60 Motion (Dkt # 122) for Relief from Order dated

4/26/05 is DENIED.

    6.    Plaintiff Aaron Raiser's Motion for Sanctions (Dkt # 121) is DENIED.

    7.    Plaintiff Aaron Raiser's motion for leave to amend the Complaint (Dkt # 13) is DENIED.

    8.    Defendant BYU's Motion for Permanent Injunction Against Aaron Raiser as a Vexatious Litigant (Dkt # 134) (in which the LDS Church joins (see Dkt # 144)) is DENIED WITHOUT PREJUDICE and REFERRED TO CHIEF JUDGE DEE BENSON FOR RESOLUTION with a recommendation that Mr. Raiser be placed on the court's restricted filer list.

    9.    Defendant BYU's Motion to Strike Plaintiff's Response to Motion to Hold Plaintiff as a Vexatious Litigant (Dkt # 184) is DENIED AS MOOT.

DATED this 7th day of February, 2006.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge